UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DRENA P.,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

CASE NO. C20-5648-MAT

ORDER RE: SOCIAL SECURITY DISABILITY APPEAL

Plaintiff proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied Plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) after a hearing before the administrative law judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, this matter is AFFIRMED.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1969.[1] Plaintiff has a high school education and previously worked as a cashier, national park ranger, aesthetician, retail manager, and receptionist. (AR 304.) Plaintiff filed an application for SSI on February 21, 2018, and an application for DIB on February

---

[1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

ORDER
PAGE - 1

22, 2018, alleging disability beginning December 31, 2016. (AR 247–56.) The applications were denied at the initial level and on reconsideration. On July 11, 2019, the ALJ held a hearing and took testimony from Plaintiff and a vocational expert (VE). (AR 40–100.) On July 31, 2019, the ALJ issued a decision finding Plaintiff not disabled. (AR 12–38.) Plaintiff timely appealed. The Appeals Council denied Plaintiff's request for review on April 29, 2020 (AR 1–6), making the ALJ's decision the final decision of the Commissioner. Plaintiff appeals this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). "Substantial evidence" means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).

At step one, the ALJ must determine whether the claimant is gainfully employed. The ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (AR 17.)

At step two, the ALJ must determine whether a claimant suffers from a severe impairment. The ALJ found that Plaintiff has the following severe impairments: major depressive disorder, generalized anxiety disorder, arthritis, history of ankle fracture, degenerative disc disease, spondylolisthesis, radiculopathy, IT band syndrome, obesity, hypothyroidism, headaches, and asthma. (AR 17.) The ALJ also found that Plaintiff has the following nonsevere impairments: ganglion cysts on both hands, history of bilateral CTS surgery, and history of right carpal tunnel syndrome release. (AR 18.)

At step three, the ALJ must determine whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Plaintiff's impairments did not meet or equal the criteria of a listed impairment. (AR 18–21.)

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found Plaintiff able to perform light work, as defined in 20 C.F.R. §§ 404.1567(b) and 41.967(b), that does not require crawling or climbing of ladders, ropes, or scaffolds, that does not require more than occasional stooping, kneeling, crouching, or climbing of ramps or stairs; that does not require concentrated exposure to vibration, pulmonary irritants, hazards, or extreme cold; and that is low stress, meaning it consists of simple tasks, it does not require more than occasional interaction with the general public, it does not require more than occasional adaptation to changes, and it provides goals set by others. (AR 21.) With that assessment, the ALJ found Plaintiff unable to perform her past relevant work. (AR 31.)

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant

retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of a VE, the ALJ found Plaintiff capable of performing other jobs, such as work as an office helper, routing clerk, mailroom sorter, document preparer, and surveillance system monitor. (AR 32.)

Plaintiff argues that the ALJ erred by (1) improperly evaluating the medical evidence; (2) improperly evaluating Plaintiff's testimony; (3) improperly evaluating the lay evidence; and (4) improperly assessing Plaintiff's RFC and basing the step five finding on an erroneous RFC assessment. Plaintiff requests remand for further administrative proceedings. The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

1. **Medical Opinions**

The regulations effective March 27, 2017, require the ALJ to articulate how persuasive the ALJ finds medical opinions and to explain how the ALJ considered the supportability and consistency factors.[2] 20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b). The regulations require an ALJ to specifically account for the legitimate factors of supportability and consistency in addressing the persuasiveness of a medical opinion. The "more relevant the objective medical evidence and supporting explanations presented" and the "more consistent" with evidence from other sources, the more persuasive a medical opinion or prior finding. *Id.* at §§ 404.1520c(c)(1)–(2), 416.920c(c)(1)–(2).

Further, the Court must continue to consider whether the ALJ's analysis is supported by substantial evidence. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5852 (Jan. 18, 2017) ("Courts reviewing claims under our current rules have focused

---

[2] The Ninth Circuit has not yet addressed the 2017 regulations in relation to its standard for the review of medical opinions.

ORDER
PAGE - 4

more on whether we sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision … [T]hese courts, in reviewing final agency decisions, are reweighing evidence instead of applying the substantial evidence standard of review, which is intended to be highly deferential standard to us."). With these regulations and considerations in mind, the Court proceeds to its analysis of the medical evidence in this case.

A. <u>Dr. M. Clark, M.D.</u>

Dr. Clark evaluated Plaintiff on May 19, 2018, and diagnosed Plaintiff with major depressive disorder and generalized anxiety disorder with likely cluster B traits versus possible personality disorder. (AR 538–39.) Based on the examination findings, Dr. Clark opined that Plaintiff would likely not have difficulty performing simple and repetitive tasks, accepting instructions from supervisors, interacting with co-workers or the public on a steady basis, or performing activities on a consistent basis without special or additional instructions. (AR 539.) However, Dr. Clark expressed concerns about Plaintiff's ability to perform "the detailed and complicated tasks" and opined that Plaintiff "would have difficulty maintaining regular attendance and completing a normal workday or workweek without interruptions from her psychiatric condition" and "is likely to have difficulty with attendance and difficulty with performing the tasks required of her on a full-time basis." (AR 539.) Further, Dr. Clark determined that Plaintiff "would have more difficulty dealing with the usual stress encountered in the workplace and this would tend to manifest as worsening mood, anxiety, and possibly pain complaints." (AR 539–40.)

The regulations require the ALJ to articulate the persuasiveness of each medical opinion and explain how the ALJ considered the supportability and consistency factors for that opinion. 20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b). The ALJ found Dr. Clark's opinion "somewhat

persuasive" (AR 29), concluding that "Dr. Clark's opinion is inconsistent with treating physician, Dr. Veith's opinion that the claimant has no emotional factor contributing to symptoms and limitations" and that "Dr. Clark's opinion is inconsistent with the medical record's lack of mental health treatment either sought by the claimant or recommended by medical providers who treated her." (AR 29.)

Plaintiff argues that the ALJ improperly evaluated Dr. Clark's opinion by finding it inconsistent with the opinion of Dr. Veith in regard to emotional factors contributing to Plaintiff's symptoms. Dr. Veith, Plaintiff asserts, only evaluated functional effects that were related to Plaintiff's feet. The Court agrees. As described further below, Dr. Veith, an orthopedic surgeon, evaluated Plaintiff's feet, foot symptoms, and ambulation and noted throughout his physical medical source statement that his opinion related to her feet. (AR 580–84, 725–26.) Accordingly, Dr. Veith did not express an opinion concerning contributing emotional factors unrelated to Plaintiff's feet. The ALJ, therefore, did not reasonably find Dr. Clark's opinion to be inconsistent with Dr. Veith's opinion concerning emotional factors.

Although the ALJ did not reasonably find Dr. Clark's opinion inconsistent with Dr. Veith's, as described above, the Court finds that this error was harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (an error is harmless if it is "inconsequential to the ultimate nondisability determination"). The ALJ included limitations in the RFC that reflected Dr. Clark's findings, including limiting Plaintiff to low stress work in order to "reduce[] the degree of interruption and difficulty persisting or attending." (AR 29.) The ALJ also presented the VE with hypotheticals regarding nonattendance and not persisting at work tasks and, based on the VE's testimony, found that "persistence at occupations identified would be possible despite claimant's limitations." (AR 30, 96–97.) Therefore, the ALJ's error regarding his evaluation of the

ORDER
PAGE - 6

supportability and consistency factors for Dr. Clark's opinion were harmless because the RFC accounted for the functional limitations identified by Dr. Clark.

B. <u>Dr. Robert G. Veith, M.D.</u>

Dr. Veith examined Plaintiff on July 17, 2018, and determined that Plaintiff has osteoarthritis in both mid feet with associated foot discomfort with prolonged standing and previous surgery for a left ankle fracture. (AR 726.) Dr. Veith opined that "[i]t would definitely be preferable if [Plaintiff] could be in a line of work that did not require prolonged standing and walking" but that "the job description is not medically necessary" and "her foot symptoms and foot conditions are stable." (AR 725.) Dr. Veith also completed a physical medical source statement dated the next day, July 18, 2018, on which he again noted that Plaintiff experienced pain symptoms in both feet with prolonged standing and walking, that Plaintiff reported that she can sit, stand, or walk for less than two hours in an eight-hour workday, and that Plaintiff did not report a functional limitation by distance walked. (AR 580–84.) Dr. Veith further opined that a job that permits Plaintiff to shift positions at will from sitting, standing, or walking is preferred but not medically required and that Plaintiff's symptoms are likely to be severe enough to interfere with her attention and concentration for 10 percent of the workday. (AR 581, 583, 726.)

The regulations require the ALJ to articulate the persuasiveness of each medical opinion and explain how the ALJ considered the supportability and consistency factors for that opinion. 20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b). The ALJ found Dr. Veith's opinion "partly persuasive as it appears to recite the claimant's subjective assertions rather than providing his opinion." (AR 29.)

Plaintiff argues that the ALJ improperly evaluated Dr. Veith's opinion by failing to acknowledge that Dr. Veith was only describing limitations related to Plaintiff's feet and that,

ORDER
PAGE - 7

although Dr. Veith opined that Plaintiff could do unlimited sitting, Plaintiff "has other impairments which limit her ability to sit." Plf. Br. at 4; Plf. Reply at 6. Where the physician's report did not assign any specific limitations or opinions in relation to an ability to work, "the ALJ did not need to provide 'clear and convincing reasons' for rejecting [the] report because the ALJ did not reject any of [the report's] conclusions." *Turner v. Comm'r of Social Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010). Here, Dr. Veith did not assign limitations to Plaintiff that were unrelated to Plaintiff's feet. Further, Dr. Veith noted Plaintiff's self-assessment of certain limitations (AR 580–84), but the doctor did not specifically endorse or impose those limitations. (AR 726.) *Tuner*, 613 F.3d at 1222–23 (ALJ properly incorporated opinions by assessing RFC limitations "entirely consistent" with limitations assessed by physician). Therefore, the ALJ properly evaluated Dr. Veith's opinion by considering only those limitations that Dr. Veith assigned.

Plaintiff further argues that the ALJ failed to state any legitimate reasons for failing to accept Dr. Veith's opinion that Plaintiff would preferably need a job where she could avoid prolonged standing and walking. An ALJ may reasonably decline to adopt the opinion of a physician "offered as a recommendation, not an imperative." *Carmickle v. Comm'r of Social Security*, 553 F3d 115, 1165 (9th Cir. 2008). Here, Dr. Veith opined that a job where Plaintiff could change positions from sitting, standing, or walking is preferred but "not medically necessary." (AR 726.) The ALJ, therefore, did not err by declining to adopt Dr. Veith's recommendation as a limitation in the RFC.

Even if there was error in the ALJ's evaluation of Dr. Veith's opinion, such error would be harmless because the ALJ's step five findings reflected the stricter limitations identified by Dr. Veith. *See Molina*, 674 F.3d at 1115 (an error is harmless if it is "inconsequential to the ultimate nondisability determination"); *Tuner*, 613 F.3d at 1223 (ALJ need not provide reason for rejecting

physician's opinions where ALJ incorporated opinions into RFC). The ALJ's step five findings included two sedentary jobs: document preparer and surveillance system monitor. (AR 32.) Additionally, the VE testified that some of the light jobs identified would allow changing between sitting and standing. (AR 29, 94–96.) Therefore, the ALJ's error, if any, is harmless because the step five findings accounted for the functional limitations identified by Dr. Veith.

C. Other Medical Evidence

Plaintiff does not contest the ALJ's findings regarding the other medical evidence in the record; rather, Plaintiff asserts that "[t]he record also includes treatment notes from other medical providers that do not include opinions regarding functional limitations" and "the clinical findings in these treatment notes lend further support for Dr. Veith's opinion and [Plaintiff's] testimony." (Plf. Br. at 4–5.) It is the ALJ's responsibility to resolve conflicts in the medical evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Plaintiff cites to examples of treatment notes that diagnosed Plaintiff with knee osteoarthritis, possible spinal degeneration, joint tenderness, IT band pain, and lumbar spine or low back pain. (Plf. Br. at 4–8.) However, Plaintiff does not identify any conflicts in the record that the ALJ failed to resolve nor does Plaintiff offer an alternative interpretation of this evidence. Plaintiff's citations, therefore, do not overturn the ALJ's rational interpretation of the evidence in the record, and Plaintiff has not shown that the ALJ erred when considering the medical evidence in the record. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

D. Non-Examiner's Opinions

Plaintiff argues that the ALJ erred by giving the opinions of the state agency consultants' more than limited weight, asserting that "the opinions of treating and examining physicians are

generally entitled to more weight than the opinions of non-examining physicians." (Plf. Br. at 8–9.) Under the new regulations, the ALJ no longer weighs medical opinions; rather, the ALJ determines which opinions are most "persuasive," without giving any controlling weight to any medical opinion, including treating physicians. 20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b). The Court, therefore, finds that the ALJ properly evaluated the persuasiveness of the state agency consultant's medical opinions without giving controlling weight to the treating physicians' opinions pursuant to the new regulations.

Plaintiff further argues that the ALJ erred by failing to consider that the state agency consultants evaluated Plaintiff no later than November 2018. Under the Social Security regulations, "[a]lthough adjudicators . . . are not required to adopt prior administrative medical findings when issuing decisions, adjudicators must consider them and articulate how they considered them in the decision." SSR 17-2p. Additionally, "because state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision. The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it." *Chandler v. Comm'r of Social Sec.*, 667 F.3d 356, 361 (3rd Cir. 2011). Therefore, the Court finds that the ALJ properly considered the opinions of the state agency consultants.

### 2. Plaintiff's Testimony

Plaintiff contends that the ALJ improperly evaluated Plaintiff's testimony. The rejection of a claimant's subjective symptom testimony[3] requires the provision of specific, clear, and

---

[3] Effective March 28, 2016, the Social Security Administration (SSA) eliminated the term "credibility" from its policy and clarified the evaluation of a claimant's subjective symptoms is not an examination of character. SSR 16-3p. The Court continues to cite to relevant case law utilizing the term credibility.

convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1136–37 (9th Cir. 2014) (citing *Molina*, 674 F.3d at 1112); *see also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). An ALJ may reject a claimant's symptom testimony when it is contradicted by the medical evidence, but not when it merely lacks support in the medical evidence. *See Carmickle*, 533 F.3d at 1161 ("Contradiction with the medical record is a sufficient basis for rejecting a claimant's subjective testimony."); *Burch*, 400 F.3d at 681 ("[L]ack of medical evidence cannot form the sole basis for discounting pain testimony.").

The ALJ found Plaintiff's alleged symptoms to be inconsistent with the medical opinions in the record. (AR 21–28.) Plaintiff alleges that her impairments affect her lifting, squatting, bending, standing, walking, sitting, and kneeling, and her ability to climb stairs and use her hands. (AR 356.) Plaintiff further alleges that impairments affect her memory, concentration, and her ability to complete tasks. (AR 356.) The ALJ found that, although Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms to some degree," Plaintiff's symptom reports were undermined by the medical evidence. (AR 23.)

The ALJ evaluated the objective medical evidence in the record and reasonably concluded that this evidence was inconsistent with Plaintiff's allegations of disabling physical conditions. (AR 21–28.) Regarding Plaintiff's reports of knee pain and discomfort, the ALJ found that the medical examinations revealed joint tenderness and, on occasion, mild swelling, but that Plaintiff "was able to ambulate with tandem heel-toe gait and her motor strength and sensation were intact to all four extremities," had normal range of motion, had no abnormalities in her x-rays, and felt better after receiving orthovisc injections. (AR 23–25.) Regarding Plaintiff's low back pain, the

ALJ found that the medical examination revealed limited range of motion in Plaintiff's lumbar spine, but that Plaintiff "had normal gait, well-balanced posture, and was able to walk on her heels and toes." (AR 23–24.) Regarding Plaintiff's reports of right foot pain, the ALJ found that medical examination showed tenderness along the joint and muscle, but that Plaintiff had "normal range of motion, no swelling, no ecchymosis, no LCL laxity, no bony tenderness and no MCL laxity" and Plaintiff's "foot conditions were found to be stable." (AR 23, 25.) Regarding Plaintiff's asthma and migraine conditions, the ALJ found that the medical evidence revealed that these conditions were stable on medication, that Plaintiff's respiratory exams were unremarkable, and that Plaintiff reported to her medical providers that her asthma was not exacerbating and that she experienced less than one migraine per month with no reports of vomiting. (AR 27.) The ALJ thus offered "specific, clear and convincing" reasons for finding Plaintiff's testimony was inconsistent with the medical evidence in the record and rejecting Plaintiff's testimony about the severity of her physical symptoms. *Molina*, 674 F.3d at 1112.

The ALJ also evaluated the objective medical evidence and reasonably concluded that the evidence was inconsistent with Plaintiff's allegations of disabling mental health conditions. The ALJ found that Plaintiff's mental health examinations showed that Plaintiff was able to recall three of three objects immediately and after a five-minute delay, performed serial 7s with only one error, and performed a very basic three-step command. (AR 26.) Further, the ALJ noted that the medical record showed a history of anxiety and depression, for which her treatment providers stated was controlled with medication (AR 522, 749), but that there was no anxiety or depression during the relevant period (AR 402, 677). The ALJ thus offered "specific, clear and convincing" reasons for finding Plaintiff's testimony was inconsistent with the medical evidence in the record and rejecting Plaintiff's testimony about the severity of her mental health symptoms. *Molina*, 674 F.3d at 1112.

Additionally, the ALJ found that Plaintiff reported poor compliance with her adrenal insufficiency medication and there was a lack of mental health treatment during the relevant period. (AR 26–27, 70.) Plaintiff testified that she stopped attending mental health therapy because she did not find it beneficial. (AR 72.) The ALJ may discount a claimant's subjective complaints because of "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Tommasetti*, 533 F.3d at 1039.

Finally, the ALJ found that several of Plaintiff's conditions lessened in pain or improved with treatment or medication. (AR 22–23, 25, 27.) The medical evidence and Plaintiff's reports show that Plaintiff's knee osteoarthrosis was less painful following the orthovisc injections (AR 477, 516), that her IT band syndrome was less painful when she attended physical therapy (AR 64–65, 699), that her asthma and migraines were stable on medication (AR 423, 426, 439, 441, 444–45, 659), and that, following surgery to remove the ganglion cysts on her wrists, Plaintiff experienced marked improvement in motion and comfort (AR 734.) Impairments that can be controlled effectively with treatment are not disabling for the purpose of determining disability benefits *Warre ex rel. E.T. IV v. Comm' r of Social Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

The ALJ thus reasonably concluded that the medical evidence was inconsistent with Plaintiff's claims of debilitating impairments. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4) ("We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence . . . .). The ALJ's finding is supported by substantial evidence.

### 3. Lay Witness Evidence

Plaintiff contends that the ALJ failed to properly evaluate the lay witness testimony of

Plaintiff's sister. "Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). An ALJ may discount lay witness testimony on grounds that it conflicts with the medical evidence. *Id.*

Plaintiff's sister testified at the hearing that Plaintiff is prevented from working eight-hour days, five days a week because Plaintiff cannot sit long: "If she sits too long, she has to stand up. If she stands too long, she has to sit down." (AR 80.) The ALJ found that the lay testimony was inconsistent with the opinion of Plaintiff's treating doctor, Dr. Veith, who noted that Plaintiff reported no restriction for sitting at one time related to her feet condition and that she can sit less than two hours in an eight-hour workday. (AR 27, 581.) Plaintiff argues that the ALJ failed to acknowledge that Dr. Veith's opinion only evaluates the functional effects that were related to Plaintiff's feet; however, Plaintiff does not argue that the lay testimony is otherwise consistent with Dr. Veith's opinion such that the ALJ erred by discounting the testimony. Indeed, Dr. Veith opined that, although it would be preferable if Plaintiff's work did not require prolonged standing and walking, such requirement was "not medically necessary" and "her foot symptoms and foot conditions are stable" (AR 725)—medical evidence which is inconsistent with the lay testimony. The ALJ thus gave germane reasons for discounting the testimony of Plaintiff's sister, and substantial evidence supported the ALJ's decision. *Lewis*, 236 F.3d at 511.

Additionally, as noted previously, the ALJ's step five findings included two sedentary jobs, document preparer and surveillance system monitor (AR 32), and the VE testified that some of the light jobs identified would allow changing between sitting and standing (AR 29, 94–96). Therefore, even if the ALJ erred in discounting the lay testimony regarding Plaintiff's ability to sit

ORDER
PAGE - 14

or stand for long periods, such error was harmless because the RFC accounted for the functional limitations identified by the lay witness.

Plaintiff's sister also testified that Plaintiff has "had depression for a long time but it's gotten very bad in the last two to three years." (AR 83.) The ALJ found that the lay testimony was "inconsistent with the claimant's testimony, the lack of treatment in the medical record, and the claimant's reported stability with medication." (AR 27–28.) Plaintiff testified that she did not find mental health therapy beneficial (AR 72), and the ALJ found that, although the medical record showed a history of anxiety and depression, which was controlled with medication (AR 522, 749), the medical evidence did not show anxiety or depression during the relevant period (AR 402, 677). Therefore, the ALJ properly discounted the lay testimony as inconsistent with the medical evidence. *Lewis*, 236 F.3d at 511.

Finally, the ALJ found that the lay testimony "generally mirrored the claimant's allegations" and was "unpersuasive for the same reasons that the claimant's own allegations do not fully persuade the undersigned, observing that they lack substantial support from the objective findings in the record." (AR 30.) As discussed above, the ALJ reasonably concluded that the medical evidence was inconsistent with Plaintiff's claims of debilitating impairments. *Valentine v. Comm'r of Social Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) ("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting Valentine's own subjective complaint, and because Ms. Valentine's testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony."). Accordingly, the ALJ gave germane reasons for discounting the testimony of Plaintiff's sister.

4. **The RFC Assessment**

Lastly, Plaintiff argues that the ALJ's RFC is legally erroneous because it does not include

the limitations described by Dr. Clark, Dr. Veith, Plaintiff, and Plaintiff's sister. The Court disagrees. For the reasons described in the above sections, the Court finds that the RFC accounted for the stricter functional limitations identified by Dr. Clark, Dr. Veith, Plaintiff, and Plaintiff's sister, including limiting Plaintiff to low stress work, identifying two sedentary occupations, and taking into account Plaintiff's limitations regarding changing between sitting and standing, nonattendance, and not persisting at work. (AR 29–30, 32, 94–97.) Therefore, the Court finds that the RFC took into account those limitations for which there was record support and is supported by substantial evidence. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (RFC properly includes "limitations for which there was record support"); *Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1986) (ALJ is "free to accept or reject" more restrictive limitations).

## **CONCLUSION**

For the reasons set forth above, this matter is AFFIRMED.

DATED this 29th day of June, 2021.

MARY ALICE THEILER
United States Magistrate Judge

ORDER
PAGE - 16